# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Xiamin Zeng
_____

_____
Write the full name of each plaintiff.


-against-

City of New York, et al.
_____

_____

_____

_____
Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

20 ___ CV 0451 ___
(Include case number if one has been assigned)

**AMENDED**
**COMPLAINT**

Do you want a jury trial?
☑ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

42 U.S.C. § 1983
_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                     (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

See Attached I. PARTIES

_____

First Name                    Middle Initial        Last Name

_____

Street Address

                              NY             10002
_____

County, City                    State           Zip Code

929-250-4690
_____    _____

Telephone Number                Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

See Attached I. PARTIES

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                        Zip Code

Defendant 2:

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                        Zip Code

Defendant 3:

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                        Zip Code

Defendant 4: _____

               First Name                       Last Name

               _____

               Current Job Title (or other identifying information)

               _____

               Current Work Address (or other address where defendant may be served)

               _____

               County, City                 State             Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   Rikers Island Rose M. Singer Center
_____

Date(s) of occurrence:   Jan 24 - Jan 31, 2019 and March 4 - March 5, 2019
_____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See Attached II. FACTS
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Physical Abuse causing fainting, severe dehydration, hearing loss, physical illness, vomiting, emotional distress, pain and suffering.

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

$5,000,000 for physical injuries, pain and suffering.

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 2/17/2021 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| XIAMIN | | ZENG |
| First Name | Middle Initial | Last Name |
| 110 COLUMBIA ST, APT 1A | | |
| Street Address | | |
| NEW YORK | NY | 10002 |
| County, City | State | Zip Code |
| 929-250-4690 | | amyzane77@gmail.com |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at
   www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

Zeng v. City, 20-CV-0451; Zeng v. Chell, 19-CV-3218

ZENG, XIAMIN
Name (Last, First, MI)

110 COLUMBIA ST, APT 1A    NEW YORK        NY              10002
Address                   City            State           Zip Code

929-250-4690                       amyzane77@gmail.com
Telephone Number                   E-mail Address

2/17/2021
Date                               Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

# I.   PARTIES

### A.  Plaintiff Information

Xiamin Zeng
110 Columbia Street, Apt. 1A
New York, NY 10002

### B.  Defendant Information

Defendant 1: The City Of New York
100 Church Street
New York, NY 10007

Defendant 2: Lashane Nembhard Shield # 1777
Captain Supervisor
Rikers Island Rose M. Singer Center (RMSC)
1919 Hazen Street
East Elmhurst, NY 11370

Defendant 3: Dennis Martinez Shield # 11210
Correction Officer
Rikers Island Rose M. Singer Center (RMSC)
19-19 Hazen Street
East Elmhurst, NY 11370

Defendant 4: Emmanuel Rene Shield # 1104
Correction Officer
Rikers Island Rose M. Singer Center (RMSC)
19-19 Hazen Street
East Elmhurst, NY 11370

Defendant 5: Fritzner Jean Shield # 8906
Correction Officer
Rikers Island Rose M. Singer Center (RMSC)
19-19 Hazen Street
East Elmhurst, NY 11370

Defendant 6: Nicholas Estavillo Shield # 5352
Detective
1 Police Plaza Room 110C New York, NY 10038

Defendant 7: Dennis E. Gray
Captain
NYPD-PSA 4
130 Ave C, New York, NY 10009

Defendant 8: Rhonda O'Reilly Bovell

1

Deputy Inspector
NYPD-7th Precinct
19 1/2 Pitt St, New York, NY 10002

Defendant 9: Patrick Lynaugh Shield # 3225
Detective
NYPD-7th Precinct
19 1/2 Pitt St, New York, NY 10002

Defendant 10: Eunice Iwenofu
Child Protective Specialist retired from ACS
100 Church Street
New York, NY 10007

Defendant 11: Beatrice Benon
Supervisor of ACS
150 William Street,
New York, NY 10038

Defendant 12: Rachelle Soku
ACS Lawyer

Defendant 13: David Hansell
Commissioner of ACS
150 William Street,
New York, NY 10038

Defendant 14: Karen Feuer
Principal of PS 110
285 Delancey Street,
New York, NY 10002

Defendant 15: Rosalynn Sanchez
Secretary of PS 110
285 Delancey Street,
New York, NY 10002

Defendant 16: Gregory Russ
Chair and CEO of NYCHA
90 Church Street,
New York, NY 10007

Defendant 17: Vito Mustaciuolo
General Manager of NYCHA
90 Church Street,
New York, NY 10007

2

## II.   FACTS

1. On or about 8pm January 23, 2019, Plaintiff just sent an email to Defendant PS110 School's Principal Ms. Karen Feuer and class teacher Ms. Alyssa Collins to stop school bullying against Plaintiff's son again.

2. On or about 7am, January 24, 2019, Defendants NYPD MOS Estavillo Shield # 5352, Tax No: 922310 and an unknown NYPD Officer violently kicked Plaintiff's door and broke the door lock.

3. Defendants NYPD MOS Estavillo and an unknown NYPD Officer told Plaintiff to take her son, her mother and herself for a court hearing. Defendants took them into their unmarked black car, there is no seat belts and child car seat. Defendants were driving very fast, Plaintiff and her family members did not eat any food or water since last night, her son and herself kept vomiting in the car, they were very scared.

4. On or about 8am, January 24, 2019, Defendants NYPD MOS Estavillo and an unknown NYPD Officer took Plaintiff, her mother and her son to the Queens IDV Court. Plaintiff went to the women's bathroom and Defendants following Plaintiff all the time.

5. On or about 12pm, January 24, 2019, Plaintiff, her son and her mother waited in the courtroom until Defendants ACS's social worker Eunice Iwenofu and ACS's lawyer Rachelle Soku arrived. Defendants questioned Plaintiff for Federal complaint 17-cv-9988 that Plaintiff filed against ACS workers neglected to her son.

6. Defendants ACS social worker Iwenofu and ACS lawyer Sokul arrived shouted at Plaintiff, "You must dismiss the case against ACS or you'll get into trouble. We didn't allow Linda Povman to continue to be your lawyer, and we didn't allow Trisha Foster to continue to be your son's lawyer, because they testified that your son was injured in this IDV Courtroom E-123 meeting room. Judge Elisa Koenderman was very angry that you sued ACS, NYPD and NYCHA involved her."

7. On or about 2pm, January 24, 2019, after Plaintiff declined to dismiss the Federal complaint 17-cv-9988 against ACS social worker and authorized her son's HIPAA to them, Defendants ACS social worker Iwenofu and ACS lawyer Sokul directly called the officers to handcuff Plaintiff in front of her mother and her son.

8. On or about January 24, 2019, Defendants ACS Iwenofu filed the complaint and PS 110 school secretary Roselyn Sanchez witnessed for Plaintiff's son's absence nine times, about 30 school days.

9.  Plaintiff had provided all medical and emergency notices to the school before and
    proving that were school violence and threaten from all of Defendants ACS
    workers and NYPD MOS are failing to protect Plaintiff's son for a long time.

10. On or about 5 pm January 24, 2019, Plaintiff was sent to the Rikers Island.
    Plaintiff refused to sign any documents without lawyer. Defendants Correction
    Officers a Hispanic male guard Martinez Shield # 11210, a black female
    Supervisor Nembhard Shield # 1777, a black male guard Shield # 1104 and others
    jail guards verbal abused Plaintiff: "fuck stupid Asian, fucker stupid chink, fuck
    Asian bitch, fake dead, drug person, Psycho."

11. On or about 6 pm January 24, 2019, Defendant Martinez and another jail guards
    searched Plaintiff's body violently and keeping her alone in a smallest cell, there
    was no more oxygen. Plaintiff kept telling them, "Give me water, give me food, I
    have asthma, I can't breathe, my ears are hurting, I'm feeling dizzy, my heart is
    hurting, I want to throw up. I am very sick and I must be seeing a doctor."
    Defendant Supervisor Nembhard was there all the time. Defendants did not give
    Plaintiff any food and water, Defendants did not allow Plaintiff to sleep for 10
    hours, until she fainted.

12. On or about 7 pm or later January 24, 2019, Plaintiff heavy fell on the floor from
    an iron stool, Plaintiff's head had gradually lost consciousness in the toilet
    partition, and then Defendants Supervisor Nembhard, jail guard Martinez and
    another jail guards sent Plaintiff to prison doctor's room about two hours, Plaintiff
    had been in a faint voice cried out, "I want water ", but the doctor didn't give
    Plaintiff any water until Plaintiff completely lost consciousness.

13. On or about 1am January 25, 2019, after two EMTs came and giving Plaintiff to
    drink some water, Plaintiff gradually had some consciousness, when Defendants
    Supervisor Nembhard, jail guard Martinez and another jail guards were giving
    Plaintiff leave to emergency room, Defendant jail guard Martinez and another jail
    guards pressed Plaintiff's head to take picture, fingerprinted Plaintiff and shouted
    abuse at Plaintiff, "fuck the Asian bitch, fake dead, fucking off, bull shit."

14. On or about 2am January 25, 2019, Plaintiff was sent to the emergency room in
    Elmhurst Hospital for 17 hours, and 2 more jail guards kept Plaintiff in two
    handcuffs and two ankle cuffs in nursing bed until the doctor asked them to take
    one off and gave Plaintiff an infusion.

15. On or about 9pm January 25, 2019, Plaintiff was held in a big room alone for civil
    case, and Plaintiff asked Defendants Supervisor Nembhard and Jail Guard
    Martinez and other jail guards which kind of prisoner was held here, Defendants
    told Plaintiff that most of prisoners for civil case who owed child support were
    been here.

16. But Plaintiff's child's father owed Plaintiff a huge amount of child support for many years, and he was indicted by court order and arrest warrant, but all of Defendants ACS workers and NYPD MOS threatened Plaintiff not to catch the abuser.

17. On or about 12pm January 25 2019, Plaintiff was absent from the IDV court hearing because Plaintiff fainted in prison causing Defendants Supervisor Nembhard, jail guard Martinez and another jail guards' physical and verbally abusing Defendants ACS social worker Iwenofu and ACS lawyer Sokul asked a translator telling Plaintiff's mother that they were very happy that Plaintiff had an accident in Rikers Island. If Plaintiff dies, Defendants would take Plaintiff's child with them. When Plaintiff's mother and her child heard that, they were very scary and worrying Plaintiff's safety.

18. On or about 7am January 28, 2019, when Plaintiff was waiting on line for the jail bus to go to court, many others did not want to stand next to Plaintiff. They said that they all heard Plaintiff shouting that she had asthma and she could not breathe on January 24, 2019 for fear that Plaintiff would infect them. They also all saw Plaintiff faint that day.

19. On or about 7am January 28, 2019, Defendant jail guard Shield # 1104 and another jail guards repeatedly told others prisoners in the jail bus that Plaintiff was difference with them, she had a civil case, not criminal, so all prisoners shouted at Plaintiff, "fuck the Asian bitch, fuck the chink, fuck off, bullshit." but Defendant jail guard #1104 and another jail guards didn't stop them.

20. On or about 7 am to 10am, January 28 to January 30, 2019, Plaintiff and others prisoners were on a bad snowing road several days, the jail bus took two to three hours to get there, and it took all of prisoners half an hour to an hour to get off the bus when they got there. Most of prisoners can't help urinating on the bus. They all complained Defendant jail guard #1104 and another jail guards for not letting them go to the bathroom on time, and Plaintiff endured the longest, sometimes peeing on herself.

21. On or about 9am-2pm, January 28 to January 30, 2019, Defendants jail guards sent all of the people to appear in Queens Criminal Court, but they sent Plaintiff alone to Queens Family Court. In the court, there wasn't any hearing there for Plaintiff, just in the conference room behind the courthouse.

22. Once there, Defendant Defendants ACS social worker Iwenofu and ACS lawyer Sokul appointed a Psychologist Dr. Karen. Cort and a translator had been threatened Plaintiff said you must say everything is very good, can through their interview. Plaintiff repeated told them "I was abused in prison, my physical condition is very poor, my ears are very painful, almost can't hear you, I must see the doctor, I've got to see my lawyer, my family found a lawyer for me." Defendants rejected Plaintiff's request to meet her lawyer.

5

23. On or about 7pm January 31, 2019 after approximately 8 days of detention Plaintiff was arraigned and released on Plaintiff's own recognizance. The case was initially filed with child neglect as the count and required Plaintiff to return to court in different times.

24. On or about March 1, 2019, Plaintiff's lawyer had received a confirmation letter from the court extending the court date from February 27 to April 11, 2019.

25. On or about 7am March 4, 2019, Defendants the NYPD MOS Estavillo and an unknown NYPD Officer suddenly brought Plaintiff to the Queens IDV court again and 12pm Defendant ACS lawyer Sokul questioned Plaintiff for Federal lawsuit 17-cv-9988 against ACS. Defendant ACS lawyer knew that Plaintiff lost all of income and injuring cause of them and needing treatment all the time. Defendant ACS lawyer asked Plaintiff paying a huge bail $2500 on purpose and she said if Plaintiff doesn't pay, she will make Plaintiff staying in prison for 180 days until Plaintiff's Federal complaint 17-CV-9988 will be dismissed that Plaintiff fails to respond to the court.

26. On or about 5pm March 4, 2019, Plaintiff was handcuffed in the back by Defendant jail guard Jean (No. 8906), unlike the others with their hands in front, sitting in the jail bus, Plaintiff's head kept bumping the window panes, Plaintiff kept throwing up, and Plaintiff asked Defendant jail guard Jean to treat Plaintiff like other prisoners and Defendant Jean refusing to do that.

27. On or about 6pm, March 4, 2019, Plaintiff was sent to Rikers Island again. At Rikers Island, Plaintiff was abused by Defendants Supervisor Nembhard, jail guard Martinez and another jail guards again. When Plaintiff was sent there, she was forceful body searched again, verbally abused and treated differently from other inmates. The jail guards held Plaintiff in a smallest room (Pen #9 Richmond courts), fainted for a hour, and then transferred to a large room, where no food and water was given to Plaintiff until 9 pm, and Plaintiff was not allowed to call her family.

28. On or about 10pm, March 4, 2019 Plaintiff was injected with multiple unknown vaccines and blood tests by a male prison doctor director and three female prison doctors. Meanwhile, Plaintiff was not allowed to sleep. Plaintiff's arm had deep injection marks and large bruises for many months.

29. On or about 3am, March 5, 2019, Plaintiff was given a bed in a large room with many people to sleep.

30. On or about 10am, March 5, 2019, Plaintiff was transferred to the single room for civil case where she was held last time.

31. On or about 5pm March 5, 2019, Plaintiff was released after her mother borrowed money to pay the $2500 bail.

32. On or about January 24 to January 31, 2019 and March 4 to March 5, 2019, Defendants falsely imprisoned Plaintiff twice for 10 days in Rikers Island.

33. On or about December 20, 2017 to March 20, 2019, while the Federal lawsuit: 17-cv-9988 was pending in the court, Defendants ACS and NYPD MOS never stopped harassing Plaintiff and threatening Plaintiff to dismiss the lawsuit. Defendants NYCHA's Top Executives CEO and Chair Gregory Russ and General Manager Vito Mustaciuolo, Plaintiff's former employer also involved in all the retaliation against Plaintiff.

34. On or about July 5, 2018, Defendants hired the WilmerHale firm to act as Plaintiff's lawyer and deliberately failing to contact the court to make the case 17-cv-9988 was dismissed. Some news report that NYCHA hired the top law firm WilmerHale to fend off Federal investigations against NYCHA since 2016. A conflict of interest existed between WilmerHale as the firm also signed a retainer to represent Plaintiff.

35. On or about March 20, 2019, the Federal complaint 17-cv-9988 Plaintiff filed against ACS workers was dismissed, causing Plaintiff couldn't represent her minor child due to Plaintiff was not a lawyer.

36. After that, Defendant ACS social worker Iwenofu still came to Plaintiff's home and threatening Plaintiff not to file an appeal and not to launch a new lawsuit against Defendants ACS and NYPD. Iwenofu left Plaintiff multiple voicemail messages, asking Plaintiff to go to Defendants ACS headquarters at 150 William Street alone and negotiate with their boss, without anyone else. Defendants the boss of the ACS headquarters is usually understood as Commissioner David Hansell or the Borough Manager Ms. Hills who is responsible for the incidents Defendants ACS worker Iwenofu mentioned before.

37. On or about March 2019, Plaintiff repeatedly confirmed from Defendant ACS social worker Iwenofu that Defendants NYCHA Top executives who are from Plaintiff's former employer had caused all other Defendants City and its Employees neglected and retaliating against Plaintiff. Plaintiff should know that Defendant NYCHA Top Executives doing all the disgusting things against Plaintiff. Plaintiff should sue Defendants NYCHA Top Executives as well as Defendants ACS workers. Defendant ACS workers were forced to participate in a frantic retaliation by Defendant NYCHA Top executives against Plaintiff, which was ordered by NYCHA Top executives to cover up all of NYCHA's crimes against Plaintiff and avoid Federal investigation.

38. Plaintiff had been known that Defandants NYCHA Top executives caused all other Defendants City and its Agencies neglected and retaliation against Plaintiff.

Plaintiff have been complained that all retaliation by NYCHA to many lawmakers and Federal agencies.

39. Plaintiff confirmed from Defendant ACS social worker Iwenofu that Defendant NYCHA is real evil against Plaintiff. Actually, Defendant NYCHA is very afraid of Plaintiff's Federal lawsuit. Defendant NYCHA is facing a Federal investigation.

40. Plaintiff confirmed from Defendant ACS social worker Iwenofu that Defendant NYCHA wants to shut Plaintiff up, it's crazy. If Defendant NYCHA continues to revenge against Plaintiff, Plaintiff can sue Defendant NYCHA to federal court or complaint Defendant NYCHA to NYCHA's federal monitor Mr. Bart Schwartz.

41. Plaintiff confirmed from Defendant ACS social worker Iwenofu that every public hearing in Federal court against Defendant NYCHA, who deliberately drove Plaintiff to New York State courts, even though Plaintiff had won those cases. Defendant NYCHA Top executives was afraid of Plaintiff as a witness against Defendant NYCHA in Federal court.

42. Plaintiff confirmed from Defendant ACS social worker Iwenofu that Defendant NYCHA also hired their high-paying law firm WilmerHale to pretend Plaintiff's attorney to dismiss Plaintiff's Federal lawsuit 17-cv-9988 against ACS social worker neglected to protect Plaintiff's son.

43. Because that was entirely caused by Defendant NYCHA's neglected and retaliating against Plaintiff who was a sexual assault victim at NYCHA workplace in Sept and Nov. 2016 and as a domestic violence victim at NYCHA housing project.

44. Plaintiff confirmed from Defendant ACS social worker Iwenofu saying that Defendants City and its agencies can get any lawyer from Plaintiff, whether Mr. Wylie Stecklow who was Plaintiff's former attorney, Past Chairman of Federal Bar Association or whatever. Defendants City and its agencies can get any judge from the state court, they can file any falsely accuse against Plaintiff and they can make up a court order or cancel it. Defendants can do anything to Plaintiff. Plaintiff should be known that they've done it.

45. Plaintiff confirmed from Defendant ACS social worker Iwenofu that Defendant NYCHA's Top Executives sent Judge Koenderman involving Plaintiff's final trailed family cases. Plaintiff filed a complained against Judge Koenderman's misconduct to the New York State Commission on Judicial Conduct ("SCJC").

46. Plaintiff confirmed from Defendant ACS social worker Iwenofu that Defendant City and its agencies abused power and City's judicial system has broken in Plaintiff's cases. The family court judges only questioned Plaintiff's Federal lawsuits against Defendant NYCHA as well as 17-cv-9988 Plaintiff against ACS.

47. Plaintiff confirmed from Defendant ACS social worker Iwenofu that PS 110
School Secretary Ms. Roslyn Sanchez who perjured that Plaintiff neglected to her
son and doing school bullying against to Plaintiff's son.  Ms Sanchez was in fact a
family member of Mr. Sanchez, who was one of supervisors, job discriminated
and verbal abusing against Plaintiff at LaGuardia Houses of NYCHA.

48. Plaintiff confirmed from Defendants ACS social worker Iwenofu and ACS
Supervisor Beatrice Benon mentioning all retaliation against Plaintiff caused by
Defendants NYCHA's Top Executives. Defendants ACS social worker Iwenofu
and ACS Supervisor Benon always asked Plaintiff turning off her indoor cameras.

49. On or about 11am April 11, 2019, Defendant ACS social worker Iwenofu filed
the child negligence case against Plaintiff was dismissed and the bail was ordered
back to Plaintiff in Queens IDV Court.

50. On or about April 16, 2019, the NYCDOE confirmed that Plaintiff's son L.L had
been subjected to severe school violence, and urgently transferred him from
PS110 to PS20.

51. On or about April 22, 2019, Plaintiff filed the notice of claim for false
imprisonment and was confirmed from the City of New York.

52. On or about October 22, 19, after Plaintiff made numerous phone calls,
Defendants and its agencies just returned the bail $2,500 to Plaintiff, which
Plaintiff's mother had borrowed from friends with Plaintiff's son during the snow.

53. After Plaintiff was abused and fainted in prison to the emergency department by
Defendants Supervisor Nembhard, jail guard Martinez and other jail guards,
Plaintiff often fainted to the emergency department. Several doctors diagnosed
that Plaintiff had lost her hearing in both ears, Plaintiff had dizziness, could
passed out anytime and Plaintiff needing long-term physical therapy and
psychotherapy.

54. On or about June 1, 2017 or earlier, Plaintiff won the child support order and
money judgment against Plaintiff's child's father were signed by Supervising
Judge Hon. Karen Lupuloff and Judge Hon. Emily Olshansky of New York
Family Court, but Defendant ACS, NYPD and NYCDOC never enforced the
court orders.

55. Plaintiff confirmed from Ms. Karen Moye who is a Manger of Baruch Houses that
Defendants NYCHA's Top Executives CEO and Chair Gregory Russ and General
Manager Vito Mustaciuolo deliberately failing to emergency transfer Plaintiff to a
safety housing project.  Plaintiff, as a victim of crime and domestic violence, had
been met the requirements for emergency transferring to a safety housing project
in NYCHA. Defendants intentionally placed Plaintiff, her young child and elderly
mother in a dangerous housing project.

56.  Defendants NYCHA's Top Executives CEO and Chair Gregory Russ and
General Manager Vito Mustaciuolo deliberately disrepair to Plaintiff's apartment.
Defendants retaliated against Plaintiff for a long time from work to life.
Defendants completely ruined the past happy life of Plaintiff and her family.
Defendants involved and caused all retaliation against Plaintiff by other
Defendants City agencies.

57. On or about September 2017, Plaintiff confirmed from all different Defendants,
NYPD officers, ACS workers, another City agencies and its employees and
Plaintiff's former lawyers that Defendants NYCHA's Top Executives CEO and
Chair Gregory Russ and General Manager Vito Mustaciuolo deliberately had led
all the reprisals against Plaintiff.

58. Plaintiff confirmed from both Ms. Iris Quinones and Ms. Jacqueline Xia who are
Aids to Congresswoman Nydia Velazquez, that Congresswoman Velazquez
repeatedly asked Defendants NYCHA's Top Executives CEO and General
Manager to correct her rent that she was overcharged 90% after her lawyer filed a
EEOC complaint against NYCHA in August 2017.

59. Plaintiff confirmed from Director Mabelyn and Kelly who are New York State of
Health Marketplace that Plaintiff and her son's medical insurances were stopped
together because NYCHA Top Executives gave them false information that
NYCHA happened active her employee's medical insurance after she was
terminated. And Plaintiff son's insurance was stopped alone. The fake
information from all Defendants ACS workers saying that Plaintiff's son had
additional medical insurance or Plaintiff's son living in ACS's nursing home.
Actually, Plaintiff has been raising and bearing all of her son living expenses and
medical expenses.

60. NYCHA HR Director Ms. Kenya Salaudeen and Assistant Director Ms. Deborah
Altman directly threatened Plaintiff to transfer all police reports that crimes
against Plaintiff to Defendant NYCHA self's Housing PSA 4 to vacate them. If
Plaintiff continued to sue NYCHA, Plaintiff will get trouble in her family case.
Plaintiff confirmed from her child support lawyers Mr. Jacob Gerber and Ms.
Kayla Green of King& Spalding said that Plaintiff's Local 237 lawyer Mr. Israel
Levin on behalf of NYCHA executives asked them to trick Plaintiff into Brooklyn
PCT 75 who was listed the most sued Precinct in New York City. Defendant
NYCHA tried to arrest of Plaintiff prevented Plaintiff from complain to
many Federal Agencies and Lawmakers for NYCHA job discriminated against
her as a domestic violence victim, racial discrimination and sexual assault at the
workplace.

61. On or about December 15, 2016 Queens IDV Court Judge Lenora Gerald said it's
a final trial for plaintiff's child custody case that will no more court date in the
future. Since 2013-2016, Plaintiff had multiple orders of protection from both

New York Criminal Court and Queens Criminal Court. Plaintiff received two protection orders from New York Criminal Court in 2016.

62. On or about In November 2016, Plaintiff's supervisors of NYCHA did not allow Plaintiff working off to extend her two long-term orders of protection from New York Criminal Court. Before that, Manhattan ADA Michelle Williams reminded Plaintiff that judge will grant Plaintiff a long-term order of protection.

63. On or about January 2017, after Plaintiff received an order of protection from New York Family Court. Local 237 lawyer Israel Levin threatened Plaintiff that he will transfer Plaintiff's orders of protection from New York family court to the Queens IDV Court to vacate them. Local 237 lawyer Mr. Levin threatened Plaintiff   if she would continue to sue NYCHA, Plaintiff will get trouble in her child custody case too, and that Judge Koenderman was new assigned to Plaintiff by Defendants NYCHA's Top Executives.

64. Plaintiff suffered multiple threats and retaliation from Queens IDV Court as a DV Victim in the following three years. Plaintiff confirmed that Defendants NYCHA's Top Executives are CEO and General Manager.

65. On or about December 2018, Mr. Walker Harman and Mr. Edgar Rivera represented Plaintiff filing a job discrimination lawsuit against NYCHA in this federal court. NYCHA's CEO and General Manager lead and involved in all other City Agencies retaliation against Plaintiff who was misjudged and abused by this Queens IDV court for 10 days.

66. On or about October 2019, Plaintiff filed a complaint against Judge Elisa Koenderman judicial misconduct for helping Defendants NYCHA's Top Executives to retaliate against Plaintiff to New York State Commission on Judicial Conduct. After the SCJC confirmed with Plaintiff that she got her son's full custody that she should had this full custody on December 15, 2016.

67. On or about June 1, 2017, Plaintiff won child support case and money judge, but the verdict was not enforced. Defendants NYCHA Top Executives and ACS workers participated and retaliation against Plaintiff in this case. Plaintiff confirmed that from her attorneys Jacob Gerber and Kayla Green from King& Spalding.

68. On or about 2015 to 2017, Defendant Patrick Lynaugh has been a detective charge of Plaintiff's domestic violence victim cases. Since Plaintiff was sexual assault at workplace of NYCHA on September 8, 2016 and November 2016.

69.  Defendant Lynaugh had transferred Plaintiff's domestic violence cases to PSA 4 to vacate them too. Plaintiff confirmed from Defendant Lynaugh that NYCHA Top Executives asked him to do it and if plaintiff continues to push them to catch the abuser. NYCHA will help abuser to get a protection order from PCT 75th

11

against Plaintiff. NYCHA didn't allow Plaintiff to report more crimes against Plaintiff. Later,

70. Defendant Lynaugh and PCT 7 won't protect Plaintiff. PSA 4 police made so many invalid police reports and lying to catch abuser until present. The domestic violence abuser hit Plaintiff's son in social worker's office. NYCHA executives asked PCT 1 transferred this police report to PSA 4 to vacate it too. All of cases Plaintiff asked Defendant Lynaugh confirmed with his boss Defendant Rhonda O'Reilly Bovell who as Deputy Inspector of PCT 7.

71. Defendant Lynaugh mentioned that his boss Defendant Deputy Inspector Rhonda O'Reilly Bovell ordered him to do so. Plaintiff asked Police Officers from PSA 4 to ask their Captain too, they confirmed with their boss Defendant Captain Dennis Gray knew that and ordering them to do that.

72. Defendants NYPD MOS of PSA 4 and PCT 7 conspired and covered up for NYCHA, and without their assistance, Defendants NYCHA couldn't retaliate against Plaintiff as a crime victim with protection orders.

73. Obviously, All of Defendants ACS workers knew, Defendants NYPD MOS knew, Defendants DOC knew, Defendants NYCHA knew and Defendant City knew.

74. Defendants NYPD and ACS failed to protect Plaintiff and her son as crime victims and still conspired with Defendant NYCHA to falsely accuse and falsely detain Plaintiff.

75. Defendants neglected and retaliating against Plaintiff in all. Defendants violated Plaintiff's constitutional rights intentionally for the past three years.

76. Defendants racially verbally and physically discriminated against Plaintiff who is an Asian woman, single mother, disabled, victimized for crime and domestic violence.

77. Defendants City and its employees have repeatedly abused their power and flouted the law.

78. Plaintiff had suffered serious physical damage and emotional distress.

79. Plaintiff requests the judge for a jury trial.

Dated:  2/17/2021

_____

XIAMIN ZENG Plaintiff *Pro Se*

12

To: Via Email

Stephanie De Angelis; Carolyn Kruk

Attorney for Defendants

New York City Law Dept.

E: sdeangel@law.nyc.gov
E: ServiceECF@law.nyc.gov

Lauren Esposito
Attorney for Defendants of NYCHA
E: Lauren.Esposito@nycha.nyc.gov

13